UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO: 8:23-cr-34-CEH-AAS

LEONON RICKY DAVIS
_____/

**ORDER**

This matter comes before the Court on Defendant Leonon Ricky Davis's construed motion to suppress the eyewitness identification made by Germany Roberts. (Doc. 57). The Government opposes the motion. Doc. 60. An evidentiary hearing on the motion was held March 26, 2024. The Court, having considered the motion, heard argument of counsel, and being fully advised in the premises, will deny the construed motion to suppress.

**I.    BACKGROUND AND FINDINGS OF FACT**[1]

Defendant, Leonon Ricky Davis (Defendant or Davis), was charged in a two-count Indictment with being a felon in possession of a firearm and ammunition (18 U.S.C. §§ 992(g)(1) & 924(a)(8)), and with possession with intent to distribute dimethylpentylone (21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)). Doc. 1. The drug count was subsequently dismissed. Doc. 82. On February 29, 2024, Davis filed a motion in *limine* seeking to exclude certain evidence and testimony from trial. Doc. 57. The

---

[1] The Court has determined the facts based on the testimony of witnesses and exhibits offered into evidence at the hearing held on March 26, 2024.

Court granted the motion, in part. Doc. 74. The Court reserved ruling on Defendant's request to exclude the eyewitness identification noting that such requests are more appropriately brought as a motion to suppress.

An evidentiary hearing on the construed motion to suppress the eyewitness identification made by Germany Roberts was held on March 26, 2024. At the hearing, the Court heard testimony from Tampa Police Department ("TPD") officer Jorge Tamargo, TPD officer Joshua Yungaitis, and eyewitness Germany Roberts. Additionally, the Court received into evidence video from the body worn cameras of Officer Tamargo and Officer Yungaitis from the night of the incident, as well as photographs of the vehicle crash and an ariel photograph of the neighborhood. Docs. 87, 88. Davis was present with his counsel at the evidentiary hearing.

The charges against Davis arise out of a car wreck that occurred on December 1, 2022, in which TPD's 911 dispatch received reports of a car crash outside of an apartment around 8:30 p.m. The female caller who reported the crash stated that a black male wearing a red and grey shirt got out of the vehicle and was holding a gun. TPD officers arrived at the scene within minutes and observed a black man removing a red shirt. Officers ran in pursuit and apprehended the man who later identified himself as the Defendant, Leonon Ricky Davis. When apprehended, Davis was shirtless and shoeless and did not have a gun. He was read his *Miranda*[2] rights, arrested, and handcuffed. From the video, it was apparent that Davis was impaired. Officer

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Tamargo testified that Davis had the smell of alcohol on his breath, his speech was slurred, his eyes were bloodshot and watery, he was uneasy on his feet, and he was unable to sit up. He fell onto the ground and was crying. Paramedics were called.

Officers searched the area and located a red and black shirt near the area where Davis was arrested. Bystanders directed officers to the area from where they saw Davis running. In walking the suspected path of travel, Officer Yungaitis located a baggy containing a white substance and loose cash. While continuing to look for the gun, the officers saw Germany Roberts who indicated he saw the individual exit the vehicle and that he had a handgun. Mr. Roberts observed the individual go to the side of Roberts' apartment. A black handgun was found on the ground near an air conditioning unit outside one of Mr. Roberts' windows.

At the hearing, Mr. Roberts testified he was in his apartment, that he shares with his 86-year-old grandmother, watching television when he heard a loud impact. He went outside and observed an individual in the driver's seat of the car that had crashed. He approached the vehicle to see if the individual was okay, and the individual in the car came out of the vehicle but then leaned back into the vehicle to retrieve a black handgun. Mr. Roberts described the individual as an African-American male who was short and stocky. Mr. Roberts was wearing his glasses that evening and got a good look at the individual, but he could not recall what the individual was wearing. He told officers at the scene that he would be able to identify the person he saw. Officer Yungaitis illuminated Davis, who was on the ground, with

his flashlight for a "show up,"[3] and Mr. Roberts identified Davis as the individual who had come out of the car holding the handgun. The show up was done within twenty minutes of when Mr. Roberts first observed the individual exit the driver's side of the car. At the hearing, Mr. Roberts also identified Davis, who was present in the courtroom.

## II.   DISCUSSION

Davis moves to suppress the identification by Mr. Roberts arguing that the show up was unduly suggestive and prejudicial because Davis was on the ground and handcuffed when it occurred. The Government acknowledges that show ups are inherently suggestive but argues that it was not unduly suggestive. But even if it was, the Government states that the Court must consider the five *Biggers*[4] factors, and in so doing, must conclude the identification is reliable.

The Court utilizes a two-step analysis in considering the admissibility of Mr. Roberts' out-of-court identification. First, the Court considers whether the original identification procedure was unduly suggestive. *See Cikora v. Dugger*, 840 F.2d 893, 895 (11th Cir. 1988). If it was unduly suggestive, then the question becomes whether, under the totality of the circumstances, the identification was nonetheless reliable. *Id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199 (1972)). Factors to consider in determining the reliability of the show up identification include: (1) opportunity to view; (2) degree of

---

[3] A "show up" is a process by which a suspect is shown singly to persons for the purposes of identification. *United States v. Winfrey*, 403 F. App'x 432, 435 (11th Cir. 2010).
[4] *Neil v. Biggers*, 409 U.S. 188 (1972).

attention; (3) accuracy of the description; (4) level of certainty; and (5) length of time between the crime and the identification. *Biggers*, 409 U.A. at 199.

As an initial matter, the show up procedure used by the TPD officers on the night of December 1, 2022, was not unduly suggestive. A defendant appearing in handcuffs does not automatically make a show up unduly suggestive. *See United States v. Winfrey*, 403 F. App'x 432, 436 (11th Cir. 2010) (concluding show up was not unduly suggestive when officers escorted defendant out of patrol car so the victim could see him); *United States v. Walker*, 201 F. App'x 737, 741 (11th Cir. 2006) (holding show up was not unduly suggestive where the defendant was presented for identification singly, in handcuffs, and surrounded by police officers). While Davis initially argued that he was surrounded by "multiple law enforcement officers," it was clarified at the evidentiary hearing that they were paramedics tending to his medical condition. Although the Court recognizes that show ups are considered inherently suggestive, *see United States v. Winfrey,* 403 F. App'x 432, 435 (11th Cir. 2010), "show-ups are not unnecessarily suggestive unless the police aggravate the suggestiveness of the confrontation." *Johnson v. Dugger*, 817 F.2d 726, 729 (11th Cir. 1987). The TPD officers did not aggravate the suggestiveness here.

Even if the confrontation could be considered unduly suggestive, however, the Court finds the identification by Mr. Roberts to be reliable. Considering the *Biggers*' factors, Mr. Roberts was clear about his ability to observe the Defendant's face, he was certain as to the person he observed exiting the vehicle and that the individual leaned back into the vehicle to retrieve the handgun. Mr. Roberts was wearing his glasses and

got a good look at the individual and saw him again by the air condition unit near the apartment window. Mr. Roberts identified Davis within a short period of time from first observing him, while his memory was still fresh, he accurately described Davis, and he was confident about his identification. Based on the totality of circumstances, the out-of-court identification by Mr. Roberts is reliable.

Accordingly, it is

**ORDERED**:

1. Defendant's construed motion to suppress the eyewitness identification made by Germany Roberts (Doc. 57) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on April 15, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any