UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO: 8:23-cr-34-CEH-AAS

LEONON RICKY DAVIS
_____/

## O R D E R

    This matter comes before the Court on Defendant's Renewed Motion for Judgment of Acquittal and, in the Alternative, Motion for New Trial (Doc. 122), filed on May 29, 2024.  In the motion, Defendant Leonon Ricky Davis renews his request for judgment of acquittal under Fed. R. Crim. P. 29(c) or alternatively requests a new trial under Fed. R. Crim. P. 33.[1]  The Court having considered the motion and being fully advised in the premises will deny Defendant's Renewed Motion for Judgment of Acquittal and, in the Alternative, Motion for New Trial.

## BACKGROUND[2]

    On February 1, 2023, a federal grand jury in the Middle District of Florida returned an indictment that charged Defendant Leonon Ricky Davis ("Defendant" or "Davis") with being a felon in possession of a firearm and ammunition. Doc. 1. An October 12, 2023, superseding indictment additionally charged Davis with possession

---

[1] Additionally, the motion requests the Court enter judgment of acquittal for Jorge Perez under Fed. R. Crim. P. 29(d). Doc. 122 at 1. This appears to be a defendant from an unrelated case.

[2] The parties do not provide record citations for the court testimony. Accordingly, the Court relies on the parties' recitation of the facts in their briefs, to the extent not objected to, and based on the Court's recollection.

with intent to distribute dimethylpentylone. Doc. 39. Prior to trial, the Government dismissed the drug charge. Doc. 80.

On May 13, 2024, the jury trial began on the felon in possession count. On the second day of trial, the Government presented testimony from Tampa Police Department ("TPD") Officer Joshua Yungaitis, who was one of the first officers on the scene, and from Yeznery Leon Perez, one of the witnesses who called 911. On the third day of trial, the Government presented testimony from Priscilla Paneto (friend of Leon Perez who also was on the 911 call) and Germany Roberts, who made the show-up identification of Defendant. TPD Officers Kayla Perez, Jorge Tamargo, Joseph Barry, and Joseph Ramos also testified. On the final day of trial, the Government called TPD/FBI Task Force Officer Steve Monforti to testify. During the trial, the parties stipulated to the introduction of numerous Government and defense exhibits.[3]

The Government introduced evidence of the 911 call made by Yeznery Leon Perez and Priscilla Paneto around 8:28 PM. (Government's exhibit 1). In that call, Ms. Paneto described hearing a car crash that occurred outside 2514 31st Avenue in Tampa. Ms. Paneto told the 911 operator that a man exited a black Volkswagen with a gun. She described that man as a black male wearing a red and grey shirt.

---

[3] The parties stipulated to admission of Government's Exhibits 1, 2, 3a, 3b, 4, 5a, 5b, 6a, 7a, 8-1 through 8-89, 9, 10, 101, 102, 103, 104, 105, and 106. Additionally, the parties stipulated to the introduction of the Defendant's Exhibits A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, V, Y, Z, EE, FF, II, and JJ.

The first witness to testify was Officer Yungaitis, who is a member of TPD's street anti-crime unit. He first heard the incident was a car crash but then was told it was an incident involving a firearm. He was only four blocks from the location and was on the scene within minutes. He learned that patrol officers had already arrived. Officer Yungaitis became aware that the suspect was a black male wearing a red shirt running northwest from the patrol officers, which happened to be in the direction where Officer Yungaitis and Officer Tamargo had arrived at the scene. Officer Yungaitis testified that he observed a black male with no shirt running in a northwest direction. Officer Yungaitis pulled his weapon and commanded the individual to get on the ground. The individual complied. Later, it was determined that the individual was the Defendant.

Officer Yungaitis searched the Defendant for a weapon but did not find one on the Defendant's person, so he began his search for the weapon in what he believed to be Defendant's path of travel. Jurors observed the body camera footage from the camera worn by Officer Yungaitis who testified to locating a black handgun with the assistance of witness Germany Roberts. The gun, a Smith & Wesson Model M&P 9C 9mm pistol—was loaded with 9 rounds of 9mm ammunition. Officer Yungaitis' body camera footage also showed the show-up conducted with Germany Roberts, who identified Defendant as the man whom he had observed holding the gun.

Officers Perez and Barry testified to arriving at the scene and seeing a black male removing a red shirt. They described arresting that man, who later identified himself as Leonon Davis. At the time of his arrest, Davis was shirtless, shoeless, and appeared

3

intoxicated. Officer Tamargo testified that he observed the Defendant removing his shirt as he was running away from the law enforcement officers. Officer Tamargo described the shirt as red with black sleeves.  He took Defendant into custody. Defendant was unarmed, with his pockets turned out. After securing Davis, Officer Tamargo began to search the area for the firearm. The first place he looked was underneath the red shirt that Defendant had discarded, but it was not there.

Officer Tamargo spoke to individuals at the scene in an effort to determine the Defendant's path. Searching Defendant's path of travel, he found a clear baggie containing a white rock-like substance believed to be narcotics. He later confirmed it was dimethylpentylone, which is commonly referred to on the street as "Molly." Shortly thereafter, Officer Tamargo heard Officer Yungaitis announce that he had found the gun.

Officer Tamargo stayed with the Defendant at the scene. He testified that Defendant appeared drunk because he smelled of alcohol, his speech was slurred, and his eyes were watery and bloodshot. Officer Tamargo testified that Defendant appeared to have some injuries, including a swollen lip and blood on his lip and nose. He accompanied the Defendant to the hospital, and Defendant vomited on the way.

The jury also heard from Ms. Paneto, who has lived in Belmont Heights for six years. On the evening of the incident, she heard a crash outside her apartment window. When she went outside, she saw two cars that had crashed and a few neighbors standing around. She told her friend Ms. Leon Perez to check the black Jetta to see if anyone was in the car and if they were okay. Ms. Paneto told the jury that she saw a

4

black male, approximately 5'5'' get out of the Jetta swinging a gun. Ms. Paneto testified that the male was wearing a white and red two-tone color shirt. She told the jury that the male appeared disoriented and was stumbling. She also testified that the person that law enforcement arrested was the same person she observed waving the gun.  Ms. Paneto then made an in-court identification of Davis as the man she saw exit the Jetta waving a black handgun.

Ms. Leon Perez also testified. She was with Ms. Paneto and they came out of the apartment together when they heard the crash. Ms. Leon Perez called 911 and handed the phone to Ms. Paneto. Ms. Leon Perez testified that a black, chubby gentleman came out of the driver's side door of the black Jetta. She testified he was wearing a white tank top.[4] She thought he was bleeding and that something was wrong. She testified that he went back to the car like he was looking for something and then when he came out, he was carrying a black gun in his hand. Neighbors that were standing in the area started running. She observed the man with the gun go between two houses. Ms. Leon Perez testified that she did not see anyone else in the Jetta or in the area of the Jetta.

The Government called Germany Roberts to testify. Mr. Roberts testified that he was inside his house when he heard the crash. He explained that he had seen one of the vehicles parked in front of his neighbor's house earlier that day and went on to describe how there was no one inside that vehicle after the accident. When he came

---

[4] The body worn camera video reflected she told the officers that he was wearing a red shirt.

outside after hearing the crash, Mr. Roberts saw a short, husky black male exiting the Jetta, who then leaned back into the Jetta and retrieved a small black handgun. The man with the gun started running toward Roberts, and Roberts ran away. Mr. Roberts looked back and saw the man standing near an air conditioning unit outside Mr. Roberts' mother's window.

Mr. Roberts then went back into his house and came back out once the police were there. He told the police what he observed and took them to the AC unit where he saw the man standing. Mr. Roberts gave a show-up identification to the police at the scene. The jury heard that the same man who got out of the Jetta that was carrying the gun was the person Mr. Roberts observed being arrested. Mr. Roberts made an in-court identification of Davis as the man he identified at the scene as the one holding the gun.

The final witness called by the Government was Officer Monforti, a TPD Officer and FBI Task Force Officer. He was not present on the night of the incident, nor did he participate in collecting evidence. He was the case agent who located and interviewed witnesses and put the pieces of the evidence together to create a timeline of events from the night of the offense.  Among other things, he reviewed the 911 call and the body-worn camera footage. He attempted unsuccessfully to locate the individual from the video wearing the brightly colored shirt.[5] Officer Monforti

---

[5] Defense counsel questioned several of the officers as to whether they obtained the name and identity of that individual who made statements at the scene that there were other people running.

provided testimony about the cellphone found in the Jetta. He told the jury that the phone number that called the phone was associated with the Hillsborough County Jail.[6] He also told the jury that the Jetta was owned by a woman he believed to be Davis's significant other. When asked on cross examination what Officer Monforti researched to make that determination regarding Davis's relationship with the owner of the Jetta, Officer Monforti testified that he has numerous cases with them where they have identified themselves as a couple.

Defendant orally moved for a mistrial (Doc. 108) because of Officer Monforti's statement that he knew Davis and his girlfriend from other cases. After hearing argument of counsel outside the presence of the jury, the Court denied the motion for mistrial. Doc. 109. The Court noted, first, that it was the defense that elicited the testimony. Second, Officer Monforti did not refer to any prior criminal convictions, only cases. Third, the parties already stipulated that Defendant is a convicted felon. Fourth, the Court instructed the witness not to make any further statements regarding other cases or criminal convictions of the Defendant. Fifth, the Court instructed the jury to disregard the witness's statement.

After the conclusion of evidence, Defendant made an oral motion for Judgment of Acquittal pursuant to Rule 29. Doc. 110. Defendant argued that eyewitness Germany Roberts never saw Davis drop or throw the gun and no witness can connect

---

[6] The parties stipulated that Davis was booked into the Hillsborough County Jail on November 30, 2022, and was released from the Hillsborough County Jail on December 1, 2022, at 4:21 p.m. Doc. 117-90 ¶ 5.

the Smith & Wesson gun found at the scene to Davis. Because the Government did not introduce DNA evidence showing that Davis handled that gun and because Officer Tamargo testified Belmont Heights is a high-crime area, the defense argued that no witness could say that the particular gun found at the scene was actually the one that Davis held as opposed to the gun being left there by someone else in this "high-crime" neighborhood. Additionally, Defendant argued there may have been another person on the scene who was holding the gun because the testimony of the witnesses conflicted as to whether the person holding the gun was wearing a white shirt or a red shirt. In denying the Rule 29 motion, the Court found that there was sufficient evidence from which the jury could conclude that Davis was in constructive possession of the firearm and that he knowingly possessed it such that the jury could find Defendant guilty beyond a reasonable doubt. Doc. 111.

Closing arguments were presented to the jury on May 16, 2024. The jurors deliberated the same day and found Davis guilty as to the offense charged in Count One of the Indictment of possessing a firearm after having been convicted of a felony. Docs. 107, 115. On May 29, 2024, Davis filed the instant motion (Doc. 122), and the Government responded (Doc. 126).

## LEGAL STANDARD

### A. Rule 29

Federal Rule of Criminal Procedure 29 provides the framework for judgment of acquittal based on a lack of sufficient evidence. Under Rule 29(a), "[a]fter the government closes its evidence or after the close of all the evidence, the court on the

defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." After a jury verdict, under Rule 29(c), a defendant "may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later."

In deciding a Rule 29 motion, a district court must "determine whether, viewing all evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Grigsby*, 111 F.3d 806, 833 (11th Cir. 1997) (quoting *United States v. O'Keefe*, 825 F.2d 314, 319 (11th Cir. 1987)). To challenge a jury's guilty verdict based on insufficiency of the evidence, it must be established that "no reasonable jury could have found Defendant guilty beyond a reasonable doubt on the evidence presented." *United States v. Ruiz*, 253 F.3d 634, 639 (11th Cir. 2001).

### B. Rule 33

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The Eleventh Circuit has described this as a "broad standard." *United States v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994). Additionally, "[t]he decision to grant or deny the new trial motion is within [the] sound discretion of the trial court and will not be overturned on appeal unless the ruling is so clearly erroneous as to constitute an abuse of discretion." *Id.* (quoting *United States v. Wilson*, 894 F.2d 1245, 1252 (11th Cir. 1990)).

9

In ruling on the merits of a Rule 33 challenge, the Court "may weigh the evidence and consider the credibility of the witnesses." *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985). However, it is not appropriate for the Court to "reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Id.* at 1312–13. Instead, to warrant a new trial, the "evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.* at 1313.

## C. Relevant Offense and Elements

It is unlawful for anyone who has been convicted of "a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). To prove a defendant guilty of being a felon in possession, the Government must establish beyond a reasonable doubt that:

> (1) the Defendant knowingly possessed a firearm or ammunition in or affecting interstate commerce;
> (2) before possessing the firearm or ammunition, the Defendant had been convicted of a felony – a crime punishable by imprisonment for more than one year; and
> (3) at the time the Defendant possessed the firearm or ammunition, the Defendant knew he had previously been convicted of a felony.

Doc. 112 at 11 (citing 18 U.S.C. § 922(g)(1)).

## DISCUSSION

## A. Renewed Motion for Judgment of Acquittal

Defendant moves under Rule 29(a) to set aside the jury's guilty verdict and requests a judgment of acquittal, arguing that no reasonable jury could find that the Government proved the elements of the charged offense beyond a reasonable doubt. Doc. 122. Although Defendant's motion argues that the Government is unable to prove each element of the offense beyond a reasonable doubt, several elements of the offense were stipulated to prior to the trial. The jury received into evidence a stipulation by the parties that, at the time of his arrest, Defendant Leonon Davis had previously been convicted of a felony offense and that Defendant knew, on December 1, 2022, that he was a convicted felon. Doc. 117-90 ¶¶ 1, 2. The parties further stipulated that Government's exhibit 103, which was the Smith and Wesson pistol found at the scene, was manufactured outside of Florida and had travelled in interstate commerce prior to being in the Middle District of Florida on December 1, 2022. Doc. 117-90 ¶ 3. Thus, the issue that the Government had to establish beyond a reasonable doubt, was that the Defendant had been knowingly in possession of the firearm. The jury was instructed that "possession" can include actual, constructive, sole, or joint possession. Doc. 112 at 12.

In support of his motion, Defendant argues that not one witness tied the firearm found at the scene to the Defendant. Additionally, he argues that Officer Tamargo testified that Belmont Heights is a high crime area and no DNA or fingerprint evidence was presented to the jury. Given the discrepancies in the witnesses' testimony regarding the description of the suspect and what he was wearing, Defendant submits that the credibility of the Government's witnesses was called into question.

A Rule 29 motion for judgment of acquittal should be granted if the Court finds that "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Thus, the Court "must determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008) (citing *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999)). The Court should uphold the conviction unless it finds that "the jury could not have found the defendant guilty under any reasonable construction of the evidence." *United States v. Robles*, 283 F. App'x 726, 735 (11th Cir. 2008) (quoting *United States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir. 1999)).

"On a motion for judgment of acquittal, the court must view the evidence in the light most favorable to the verdict, and, under that light, determine whether the evidence is sufficient to support the verdict." *Martinez*, 763 F.2d at 1312 (citing *United States v. Corbin*, 734 F.2d 643, 650 (11th Cir. 1984)). As the Court stated at the time of Defendant's oral Rule 29 motion, this case is about the Defendant's constructive possession of the handgun. In considering the evidence presented at trial, the Court finds there was sufficient evidence for a reasonable jury to determine that Defendant possessed the firearm and ammunition recovered by TPD on December 1, 2022.

Both Ms. Paneto and Mr. Roberts provided in-court identifications of Davis as the man they observed holding the gun on the night of the offense. Ms. Paneto observed a black, husky, approximately 5'5'' man exit the black Jetta waving a handgun. Mr. Roberts testified he saw a short, husky black male get out of the black Jetta and then lean back in to retrieve a small black handgun. These witnesses testified

12

that they did not see anyone else inside or around the Jetta, and both identified Leonon Davis as the person they observed holding the gun. Witnesses described the man with the gun as stumbling or disoriented, which was consistent with Davis's appearance in the body-worn camera footage and with the testimony of the arresting officers. Paneto and Roberts also testified that the man they saw holding the gun was the same man they saw in TPD custody shortly after the crash. The body-worn camera footage and Officer Yungaitis' testimony confirmed that man was the Defendant.

Officer Yungaitis recovered a black handgun at the scene near the air condition unit which was consistent with the testimony of Germany Roberts who observed Defendant running toward him with the handgun and then shortly thereafter standing near the AC unit at the back of Roberts' apartment.

In addition to the witnesses' testimony, the physical evidence recovered at the scene supported the inference that Defendant was the driver of the Jetta. When Defendant was arrested, he was shirtless, shoeless, and his pockets were turned out. His red shirt and the baggie of drugs were found nearby. Inside the Jetta owned by Davis's girlfriend, the officers located a cellphone, which was the same phone to which a call was made from the Hillsborough County Jail, where Davis had been earlier that day. Officers also found drugs in the Jetta that were the same type as in the baggie that security footage captured Davis dumping out of his pocket.

The defense argues that inconsistent statements about whether the individual was wearing a red shirt or a white shirt suggests there was a second person in the Jetta with Davis. But on a Rule 29 motion, the Court views the evidence in the light most

favorable to the jury's verdict. Viewing the evidence in this light, the Court concludes that a reasonable jury could have found the Defendant guilty beyond a reasonable doubt.

### B. Motion for New Trial

Defendant argues alternatively that he is entitled to a new trial because there were inconsistencies in the testimony of Germany Roberts, one of the Government's key witnesses, calling into question Roberts' credibility. Davis argues that Roberts could not state whether the person he saw holding the gun had hair or was bald, whether he had a beard or how tall he was other than to say he was shorter than Roberts himself. The defense also pointed out that Roberts previously said the suspect was wearing a white shirt. Defendant urges that Roberts was seriously impeached by prior inconsistent statements and independent evidence to warrant a new trial. The Court disagrees. A district court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The decision to grant or deny a new trial motion based on the weight of the evidence is within the sound discretion of the trial court." *Martinez*, 763 F.2d at 1312. While the Court has broad discretion, it may not reweigh the evidence because some other result would be more reasonable. *Id.* at 1312–13.

Although Mr. Roberts could not recall what length of hair Davis had or whether he was bald, Roberts testified that he got a good look at the suspect at the scene, he identified him for the police the evening of the offense and again identified Davis in court. There was sufficient testimony and evidence that corroborated that Davis was

the individual who exited the Jetta and was holding the gun. The inconsistencies relied upon by the defense do not preponderate heavily against the verdict or give rise to a miscarriage of justice. The motion for new trial based on this argument is due to be denied.

Defendant next argues that it was patently unfair and he should receive a new trial because Officer Monforti told the jury that he knew Davis and Davis's girlfriend because they had other cases together. As the Court previously ruled, Officer Monforti's testimony did not warrant a mistrial. In the first instance, defense counsel invited the testimony by asking Officer Monforti how he knew about Davis and his girlfriend. Moreover, Defendant's concern with the officer's answer was the implication it carried that Davis had previously been arrested, but the parties had already stipulated that Davis was a convicted felon and the jury was made aware of this stipulation. Further, the Court instructed the jury to disregard the officer's answer and the witness was instructed not to refer to any prior cases or criminal convictions of the Defendant. The motion for new trial on this ground is without merit.

## C. Request for Hearing

Defendant requests a hearing on his motion because the "facts of this trial . . . warrant further discussion." Doc. 122 at 14. Defendant does not cite any factual basis, newly discovered evidence, or legal authority to show that he is entitled to a hearing on the motion. A district court's decision to conduct an evidentiary hearing before ruling on a motion for new trial is discretionary. *United States v. Massey*, 89 F.3d 1433, 1443 (11th Cir. 1996). The parties have fully briefed the issues. If Defendant thought

further argument or discussion of the facts was warranted, Defendant could have moved to file a reply, which he did not do. The Court presided over each day of the trial and has reviewed the motion, the response, and the exhibits entered in evidence. Because further argument is unnecessary for the Court to rule on the instant motion, Defendant's request for a hearing is denied. *See United States v. Williams*, 779 F. App'x 601, 604 (11th Cir. 2019) ("Because the resolution of [defendant's] motion was clear from the record, the district court did not abuse its discretion by not conducting an evidentiary hearing.").

Accordingly, it is hereby

**ORDERED**:

1.     Defendant's Renewed Motion for Judgment of Acquittal and, in the Alternative, Motion for New Trial (Doc. 122) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on August 6, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any